UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re                                                                        Chapter 7

ALSHAMY REALTY, INC.,                                      Case No.  11-41839

                    Debtor.
----------------------------------------------------------x

## NOTICE OF HEARING ON APPLICATION TO LIFT THE AUTOMATIC STAY, AND TO EXCUSE COMPLIANCE BY PAUL KROHN, AS RECEIVER, OF HIS TURNONVER OBLIGATIONS

**PLEASE TAKE NOTICE**, that a hearing will be held before the Honorable Elizabeth S. Stong, at the United States Bankruptcy Court, 271 Cadman Plaza, Brooklyn, New York 11201, on the 28th day of April, 2011 at 10:00 a.m., or as soon thereafter as counsel may be heard ("the Hearing"), to consider the application of Irving Partners, LLC ("Mortgagee"): (a) pursuant to 11 U.S.C. §362(d) for an order vacating the automatic stay against Alshamy Realty Inc. to permit the Mortgagee to complete its foreclosure of the real property known as 251 Irving Avenue, Brooklyn, New York, and (b) excusing Paul Krohn, as the receiver in the foreclosure action from his turnover obligations under section 543(d) of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE,** that the exhibits to the application are too large to attach to the application, but are available electronically on the Bankruptcy Court's electronic filing website, and can also be obtained upon request made to the undersigned.

**PLEASE TAKE FURTHER NOTICE**, that objections must be served upon the undersigned and filed with the Clerk of the Bankruptcy Court, 271 Cadman Plaza East, Brooklyn, New York  11201, together with proof of service, so as to be received at least three business days before the Hearing.

Dated:        New York, New York
                    March 31, 2011

                                                    BACKENROTH FRANKEL & KRINSKY, LLP
                                                    Attorneys for Irving Partners, LLC

                                    By:        s/Mark Frankel
                                                    489 Fifth Avenue
                                                    New York, New York 10017

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re                                                                                    Chapter 7

ALSHAMY REALTY, INC.,                                              Case No.  11-41839

                    Debtor.
----------------------------------------------------------x

## MOTION TO LIFT THE AUTOMATIC STAY

        Irving Partners, LLC ("Mortgagee"), by its attorneys, Backenroth Frankel & Krinsky, LLP, as and for its application for an order (a) granting relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2) as to the real property commonly known as 251 Irving Avenue, Brooklyn, New York (the "Property"), so that the Mortgagee may exercise its rights against its collateral, and (b) excusing Paul Krohn, as receiver (the "Receiver") from compliance with 11 U.S.C. § 543(b)(1), respectfully represents as follows:

### BACKGROUND

        1.      On March 9, 2011 ("Filing Date"), the Debtor filed a petition under Chapter 7 of the Bankruptcy Code.

The Mortgagee's Claim

        2.        On or about June 26, 2001, the Debtor as owner of the Property entered into a note and mortgage with Astoria Federal Savings & Loan Association ("Astoria") in the sum of One Hundred Eighty-three Thousand Seven Hundred-fifty and 00/100 ($183,750.00) dollars. The Mortgage was recorded in the office of the City Register, County of Kings on July 27, 2001 in Reel 5233, Page 820 and the mortgage recording tax paid.

        3.        On or about March 1, 2002, the Debtor entered into another note and mortgage with Astoria in the additional sum of Seventy-seven Thousand Seven Hundred Forty-four and 01/100 ($77,744.01) dollars. This mortgage was recorded in the office of the City Register, County of Kings on July 27, 2001 in Reel 5233, Page 820. This mortgage also consolidated both loans into a single lien of Two Hundred Sixty Thousand Dollars ($260,000.00).

        4.        The mortgages and notes, as consolidated, were assigned by Astoria to Greenpoint Mortgage Funding Inc. ("Greenpoint") by an assignment of Mortgage dated August 8, 2005, and recorded on August 17, 2005 as CRFN. 2005000461853.

        5.        All of the preceding notes and mortgages, copies of which are collectively annexed hereto as Exhibit A, were consolidated into a single lien of Five Hundred Thousand and 00/100 Dollars($500,000.00) by a Consolidation, Modification and Extension Agreement dated

August 8, 2005. The consolidation agreement was recorded on August 7, 2005 as CRFN. 2005000461855. A copy of the Consolidation Agreement is annexed hereto as Exhibit B.

6. Tanya Khursanova executed and gave a certain Guarantee Agreement, dated August 8, 2005, to Greenpoint, a copy of which is annexed hereto as Exhibit C.

7. Then, by an assignment of Mortgage dated March 16, 2010, Greenpoint assigned its interests to the Mortgagee. A copy of the Assignment of Mortgage is annexed hereto as Exhibit D. The Consolidation Agreement (a copy of which is annexed as Exhibit E), states that the outstanding loan balance upon consolidation was $500,000.00 without any offsets, deductions or counterclaims and at paragraph 6, states further that "this agreement may not be changed or modified orally, but only by an instrument in writing signed by the party against whom such change or modification is sought to be enforced." (*See,* Exhibit E, Page 6, Paragraph 6)

8. The Debtor is in default by reason of its failure to pay the installments of interest and principal due February 1, 2009 and thereafter. Annexed hereto as Exhibit F is a copy of the acceleration letter of the mortgagee of July 27, 2009. The affidavit of amount due of Jacqueline Surato, shows the payment history. In addition, Debtor's letter acknowledges the default. The Debtor is also in default by reason of its failure to pay the water and sewer charges on the property (See Exhibit G).

9. The Mortgagee submitted a comprehensive accounting to the Referee in the Foreclosure action to assist him in order to compute the amount due, (excepts of which are annexed hereto as Exhibit P). As set forth therein, $622,849 is due as of February 11, 2011. This amount, however, does include shortfalls due to the Receiver and his counsel which have not yet been calculated, but are likely to amount to tens of thousands of dollars given the extensive litigation required, as set forth below.

10. The Debtor did not value the Property in its Schedules. According to an appraisal made for Greenpoint on October 29, 2009, a copy of which is annexed hereto as Exhibit R, the value of the Property was $565,000 as of October 24, 2009.

11. Accordingly, the value of the Property is less than the amount due to the Mortgagee.

The Foreclosure Action

12. The Mortgagee filed a foreclosure action (the "Foreclosure Action") on April 2, 2010. A copy of the complaint is annexed hereto as Exhibit "H".

13. The Debtor and Khursanova filed separate but identical answers/amended answers, which are annexed hereto as Exhibit "I." Such answers contain a general denial which is frivolous in light of the exhibits annexed hereto.

14. The Debtor and Khursanova asserted nine form book affirmative defenses.

15. The first, second and third "affirmative defenses" are unfounded. Failure to state a cause of action is not an affirmative defense, but rather is a ground to seek the dismissal of a complaint (*see* CPLR 3211(a)7). And, the complaint clearly states a cause of action in foreclosure. The complaint states a cause of action, naming the parties, the obligation, the default thereon and the remedy sought. The Defendants did not plead any facts to contradict the pleadings of the complaint.

16. As to the fourth affirmative defense of champerty, the assignment of GreenPoint's claim does not violate the champerty statute because the champerty statute does not apply when the purchase of an assignment is made to collect a legitimate claim. The mortgage is valid, the default real, and the action was commenced not to realize litigation costs, but to enforce a valid debt. In similar circumstances, the Court of Appeals has dismissed champerty as a defense to an assignee bringing an action to enforce a legitimate debt. *See Trust for the Certificate Holders of the Merrill Lynch Mortgage Investors, Inc. Mortgage PASS Through Certificates, Series 1991-C1 v. Love Funding Corporation*, 13 NY3d 190 (2009).

17. Defendants' sixth affirmative defense, although inartfully plead, is waiver and estoppel. In that regard, a party asserting estoppel must show with respect to itself: (1) lack of knowledge of the true facts; (2) defendant's conduct in reliance upon the conduct of the party

estopped; and (3) a prejudicial change in its position based on such reliance. *Airco Allys Div v. Niagra Mohawk Power Corp.,* 76 A.D.2d 68, 81-82, *BWA Corp. v. Altran Express USA, Inc.*, 112 A.D.2d 859,853 (1st Dept. 1985). The answer does not make any factual allegation that would support any of these elements. Defendants did not assert what provision or provisions in the mortgage was waived and how plaintiff should be estopped. Indeed, paragraphs 6 and 26 of the Consolidation, Modification and Extension Agreement provide that any changes to the mortgage agreement must be in writing signed by the party against whom, enforcement is sought. (See Exhibit K ). Each preceding modification of the mortgage had similar anti-estoppel language which would bar the assertion of this defense.

18.     Defendants also asserted lack of consideration as an affirmative defense. The mortgage, however, was fully funded, as indicated in the disbursement sheet annexed Exhibit L. It clearly shows the disbursement of the proceeds of the mortgage and the approval of the Debtor for said disbursements. Furthermore, this allegation is not a defense to a foreclosure action, nor is it pled with any form of particularity. All funds lent were disbursed at closing.

19.     In addition, the Debtor raised unsupported allegations of unclean hands and unconscionability. These affirmative defenses are pled as conclusions of law not supported by any facts. Moreover, unconscionability or "unclean hands" is not recognized as a defense to a foreclosure action. *JoAnn Homes at Bellmore, Inc. V Dowetz*, 302 N.Y.S. 2d 799 (1969); *accord, Manufacturers and Traders Trust Company v. Federal Electronics, Inc.* 384 N.Y.S. 2d. 331 (4th Dept. 1976).

20. Based upon the foregoing, and over the Defendants objection, a copy of which is annexed hereto as Exhibit O, the Supreme Court entered summary judgment in favor of the Mortgagee, copy of which is annexed hereto as Exhibit P.

21. Then, the Debtor asserted that there was a tenant in the Property that had not been named in the foreclosure action. As will be shown below, the tenant appears to be a sham, however, the Supreme Court ordered that the tenant be served with a complaint so that the Supreme Court could strike the lease.

The Receiver's Action Against the Debtor's Alter Ego/Sham Tenant

22. On or about December 7, 2010, by motion annexed hereto as Exhibit S, the Receiver sought an order in the Foreclosure action finding that the Debtor perpetrated a fraud concerning the occupancy of the store front and back storage area on the first floor of the Property, and directing turnover of that space.

23. The Receiver noted in his application that the Debtor had confirmed in writing that as of September 2009, the subject space was occupied by a commercial tenant paying $1,800 per month, and that the origin of the Debtor's problems was the commercial tenant's defaults and subsequent eviction expenses.

24. In contradiction, however, the Debtor also represented that it had entered into a January 1, 2008 lease with 251 Irving LLC for one year (sic.) commencing on January 1, 2008 and expiring on December 31, 2013, at $850.00 per month ("2008 Lease"). This was the same period of time during which the Debtor had represented that the $1,800 per month tenant for the same space was creating all of the Debtor's problems. 251 Irving LLC, however, did not even come into existence until July 21, 2008, some eight months after allegedly executing a lease. And, in contradiction to both the story about the non-paying $1,800 per month tenant, and the story about the 251 Irving LLC tenancy, Capital One's appraiser reported that as of October 24, 2009, the first floor was owner occupied.

25. This was only the beginning of the Debtor's stories. In response to the Receiver's request for a copy of leases, the Debtor forwarded yet another commercial lease between itself and 251 Irving LLC dated February 28, 2010 for a three year term for the First Floor Store and Rear storage area in the sum of $1,000.00 per month ("2010 Lease").

26. The Receiver, therefore made his motion because he suspected that Alshamy was using 251 Irving LLC "to claim that there is a 'tenant' to avoid surrender of the valuable leasehold space and thus continue to defraud and deprive the Lender of its rights under the mortgage."

27. At the hearing of the motion, the Receiver's suspicions were confirmed as true. A copy of the hearing transcript is annexed hereto as Exhibit T. Ms. Khursanova testified

that she and her husband are the sole members of both the Debtor and 251 Irving LLC. She testified further that 251 Irving LLC paid the Debtor all $36,000 of the rent due for the term of its 2010 Lease for the entire 36 month term, in cash. Ms. Kursonova, however, cannot account for the cash. In fact Khursanova testified that for the entire period of her ownership, all rent was paid in cash and she can account for none of it.

      28.    After hearing Khursanova's testimony, Judge Miller said:

> I don't know how you run your business. This cash, hundreds of thousands of dollars in cash, no receipts, nothing. Now, you collected, which is highly unusual, why anybody would pay three years in advance, rents in advance is beyond me. Let's say they did, you have $30,000 of the bank's money. It is not your money.
> So why don't we take a break so you can talk to your client because if that is her testimony, that to me seems to be an appropriate order, that she turn over $30,000 or she goes to jail. She admitted she collected rents that belong to the Receiver. I just want to make sure you understand.

Exhibit T, Transcript, p. 101-102.

      29.    At the end of the hearing, the parties announced a settlement agreement on the record, which required, among other things, the Debtor to turnover title to the Mortgagee. The Debtor reneged, and then filed this case before the adjourned date of the contempt hearing.

## RELIEF REQUESTED HEREIN

<u>Cause Exists to Lift the Automatic Stay</u>

30.     By this Application, the Mortgagee moves to lift the automatic stay to permit its foreclosure to proceed, and to continue the Receiver in possession.

31.     Section 362(d)(1) provides for lifting the automatic stay for "cause, including lack of adequate protection" and section 362(d)(2) provides for lifting the automatic stay where the Debtor lacks equity in the property and the subject property is not necessary for an effective reorganization in prospect.

32.     In this case, cause exists to lift the stay in the first instance because this is essentially two-party dispute, so little purpose is served administering this asset in the Bankruptcy Court. There are only 2 creditors: the Mortgagee and a $7,000 judgment lien creditor. As set forth in detail above, the Foreclosure is contested. In granting summary judgment, the Supreme Court has already rejected the Debtor's defenses and they should not be reconsidered by this Court.

33. Similarly, the Supreme Court is already dealing with the Debtor's misconduct, and while the Debtor probably does not want the contempt hearing to continue, it makes no sense to for this Court to rehear the evidence.

34. Accordingly, there is no purpose to this asset being administered by a trustee in Chapter 7 because the interests of the Mortgagee and the judgment creditor, as secured creditors, are already protected under New York law, and the Debtor's principal, the only other party with a stake in the outcome, is already participating in the Foreclosure action as an owner, guarantor, and tenant.

35. In summary, this bankruptcy seems to have been filed merely to throw an obstacle in the Mortgagee's path (and the Supreme Court's path) before the day of reckoning in the Foreclosure. This a essentially a two party dispute involving litigation that is due for a decision in the Foreclosure and there is no benefit to be gained by rehearing those issues in this Court.

36. In addition, the Mortgagee's appraisal indicates that the estate lacks equity in the Property. The Property value is $565,000 as of the post-economic collapse date of October 2009, and the Mortgagee's secured claim is far in excess of that amount leaving Property underwater.

37.     For all of these reason, cause exists to lift the automatic stay, so that the decline in the value of the Property can be abated in the Foreclosure case.

38.     Under section 362(d)(2) the Property is not necessary to an effective reorganization because this is a Chapter 7 case.

<u>The Continuation of the Receiver in Possession is in the Best Interests of Creditors</u>

39.     Section 543(b)(1) of the Bankruptcy Code requires a custodian to deliver to the trustee any property of the debtor held by such custodian. Section 543(d)(1) of the Bankruptcy Code, however, permits the court to excuse turnover:

> after notice and a hearing, the bankruptcy court—(1) may excuse compliance with subsection (a) . . . if the interests of creditors . . . would be better served by permitting the custodian to continue in possession, custody or control.

11 U.S.C. § 543(d).

40.     In this case, the Property is already being operated by a court appointed fiduciary, who also happens to be a member of the Bankruptcy Court's trustee panel, and the Mortgagee, as the only interested creditor, believes that its interests are best served by the consistent operation of the Property by the Receiver. He has a history with the Property, he is actively engaged in litigation to protect the Property from looting by the Debtor's principal. Displacing the Receiver would interrupt those efforts, and at a minimum, will compound fees and expenses.

41. Moreover, since the Receiver is a member of the Chapter 7 trustee panel in this District, there should be no concern regarding the preservation of the bankruptcy estates rights in the context of the Foreclosure.

42. Accordingly, it is the best interests of all parties for the Receiver to be excused from compliance with his turnover obligations under section 543 of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, the Mortgagee respectfully requests that the Court enter an order granting the relief requested herein, and that the Court grant such other relief as may be just and proper.

Dated:   New York, New York
         March 29, 2011

                              **BACKENROTH FRANKEL & KRINSKY, LLP**
                              Attorneys for the Mortgagee


                         By:  s/Mark A. Frankel
                              489 Fifth Avenue
                              New York, New York 10017
                              (212) 593-1100

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re                                             Chapter 11

ALSHAMY REALTY, INC.                              Case No.  11-41839

                Debtor.
----------------------------------------------------------x

## RELIEF FROM STAY – REAL ESTATE AND
## COOPERATIVE APARTMENTS BACKGROUND INFORMATION

1. ADDRESS OF REAL PROPERTY OR COOPERATIVE APARTMENT:  251 Irving Avenue, Brooklyn, New York

2. LENDER NAME: Irving Partners, LLC

3. MORTGAGE DATE: August 7, 2005

4. POST-PETITION PAYMENT ADDRESS: c/o Backenroth Frankel & Krinsky, LLP, 489 5th Ave, New York, NY 10017

## DEBT AND VALUE REPRESENTATIONS

5. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF THE MOTION FILING DATE: $680,435
*(THIS MAY NOT BE RELIED UPON AS A "PAYOFF" QUOTATION.)*

6. MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT AS OF THE MOTION FILING DATE: $565,000.

7. SOURCE OF ESTIMATED MARKET VALUE: October 2009 Appraisal

## STATUS OF THE DEBT AS OF THE PETITION DATE

8. DEBTOR(S)'S INDEBTEDNESS TO MOVANT AS OF THE PETITION DATE:
    A. TOTAL:                                             $680,435

    B. PRINCIPAL:                                         $472,095

    C. INTEREST:                                          $120,594

  D. ESCROW (TAXES AND INSURANCE):         $4,139

  E. FORCED PLACED INSURANCE EXPENDED BY MOVANT:   $5,361

  F. PRE-PETITION ATTORNEYS' FEES CHARGED TO DEBTOR(S):  $52,710

  G. PRE-PETITION LATE FEES CHARGED TO DEBTOR(S):    $3,304

9. OTHER CONTRACT INTEREST RATE:

1/1/09 - 8/31/10: contract rate at 7% plus default rate at 5% for a total of 12%

9/1/10 - 3/9/11: contract rate 5% plus default rate at 5% for a total of 10%

*(IF THE INTEREST RATE HAS CHANGED, LIST THE RATE(S) AND DATE(S) THAT EACH RATE WAS IN EFFECT ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: )*

10. OTHER PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE:

Prepayment penalty: $4,721, Environmental study: $1,500, Receiver bond: $360, Environmental test for boiler replacement: $125, boiler replacement: $14,700, default interest on protective disbursements: $826.

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: _____.)*

## AMOUNT OF POST-PETITION DEFAULT AS OF THE MOTION FILING DATE

11. DATE OF RECEIPT OF LAST PAYMENT: 1/1/09

12. NUMBER OF PAYMENTS DUE FROM PETITION DATE TO MOTION FILING DATE: Mortgage has been accelerated. Total amount due.

13. POST-PETITION PAYMENTS IN DEFAULT:

Mortgage has been accelerated.  Total amount due.  No post petition payments have been made.

| PAYMENT DUE DATE | AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
| TOTAL: | $ | $ | $ | $ | $ | $ |

14. OTHER POST-PETITION FEES CHARGED TO DEBTOR(S):

    A. TOTAL:      $2,500

    B. ATTORNEYS' FEES IN CONNECTION WITH THIS MOTION:      $2,350

    C. FILING FEE IN CONNECTION WITH THIS MOTION:      $150

    D. OTHER POST-PETITION ATTORNEYS' FEES:      $-0-

    E. POST-PETITION INSPECTION FEES:      $-0-

    F. POST-PETITION APPRAISAL/BROKER'S PRICE OPINION FEES:      $-0-

    G. FORCED PLACED INSURANCE EXPENDED BY MOVANT:      $-0-

15. AMOUNT HELD IN SUSPENSE BY MOVANT:      $-0-

16. OTHER POST-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE: Unliquidated Receiver's charges and attorneys fees.

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: _____.)*

# REQUIRED ATTACHMENTS TO MOTION

PLEASE ATTACH THE FOLLOWING DOCUMENTS TO THIS MOTION AND INDICATE THE EXHIBIT NUMBER ASSOCIATED WITH EACH DOCUMENT.

COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S INTEREST IN THE SUBJECT PROPERTY. FOR PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT TOGETHER WITH A COMPLETE AND LEGIBLE COPY OF THE MORTGAGE AND ANY ASSIGNMENTS IN THE CHAIN FROM THE ORIGINAL MORTGAGEE TO THE CURRENT MOVING PARTY.
(See Exhibit A, B and D to attached Lift Stay Motion)

COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S STANDING TO BRING THIS MOTION.

(See Exhibit A, B and D to attached Lift Stay Motion)

(1)    COPIES OF DOCUMENTS THAT ESTABLISH THAT MOVANT'S INTEREST IN THE REAL PROPERTY OR COOPERATIVE APARTMENT WAS PERFECTED. FOR THE PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE FINANCING STATEMENT (UCC-1) FILED WITH THE CLERK'S OFFICE OR THE REGISTER OF THE COUNTY IN WHICH THE PROPERTY OR COOPERATIVE APARTMENT IS LOCATED.

(See Exhibit A, B and D to attached Lift Stay Motion)

DECLARATION AS TO BUSINESS RECORDS

I, ANDREW LANDESMAN, THE MANAGING MEMBER OF IRVING PARTNERS, LLC, THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE INFORMATION PROVIDED IN THIS FORM AND ANY EXHIBITS ATTACHED HERETO (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1 ,2, AND 3, ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS; THAT THE RECORDS WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND THAT THE RECORDS WERE MADE IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER DECLARE THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, ABOVE, ARE TRUE AND CORRECT COPIES OF THE ORIGINAL DOCUMENTS.

EXECUTED AT NEW YORK, NEW YORK ON THIS 23RD DAY OF MARCH, 2011

              s/ Andrew Landesman, Managing Member
              Irving Partners, LLC, c/o Backenroth
              Frankel & Krinsky, LLP, 489 Fifth Avenue,
              New York, New York 10017

## DECLARATION

I, ANDREW LANDESMAN, THE MANAGING MEMBER OF IRVING PARTNERS, LLC, THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT NEW YORK, NEW YORK ON THIS 23RD DAY OF MARCH, 2011

              s/ Andrew Landesman, Managing Member
              Irving Partners, LLC, c/o Backenroth
              Frankel & Krinsky, LLP, 489 Fifth Avenue,
              New York, New York 10017